1  dana@danaoliverlaw.com
   OLIVER LAW CENTER, INC.
2  8780 19th Street #559
3  Rancho Cucamonga, CA 91701
   Telephone: (855)384-3262
4  Facsimile: (888)570-2021
5  Attorney for Plaintiff and Putative Class

6
   [Additional counsel appear on signature
7  page]
8
   *Attorney for Plaintiff and the Proposed*
9  *Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ASHER BRONSTIN, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY D/B/A SOCAL EDISON<br><br>Defendant. | **JOINT RULE 26(f) REPORT**<br><br>Case No. 8:25-cv-02334-KES |

1. Statement of the Case

**Plaintiff's Statement**:

Plaintiff alleges that Southern California Edison Company ("SCE" or "Defendant") made calls to protected telephone numbers using a prerecorded voice, including his own. Due to the *en masse* nature of the calling, the Plaintiff has filed this matter as a putative class action on behalf of the following class of individuals: **Robocall Class:** Plaintiff and persons throughout the United States (1) to whom SoCal Edison placed a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a SoCal Edison customer or account, (3) in connection with which SoCal Edison used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

The Plaintiff received at least three calls that were directly from SoCal Edison containing two different sets of prerecorded messages. Those messages make clear that the calls were *not* sent for emergency purposes, as they make no reference to any emergency. Plaintiff understands that it is the Defendant's contention that the calls were purportedly "emergency" calls pertaining to a purported account disconnection. Plaintiff disputes that such calls constitute "emergencies" as a matter of law, and moreover that the extreme measure of sending incessant *prerecorded* calls, as opposed to alternative methods of communications or live calls, was appropriate. Moreover, at least two of the calls simply directed the Plaintiff to call a toll free number, which is inconsistent with "emergency" calls requiring immediate attention. Finally, any purported "emergency" would be self-inflicted, self-imposed, and self-generated by Defendant, including any purported "disconnection," which is entirely within Defendant's control.

    Contrary to Defendant's assertions, courts in this Circuit routinely certify wrong number TCPA class actions and find that the defendant's class calling data, coupled with other databases and skip tracing methods, can be used to identify numbers which have been reassigned. *Caldera v. Am. Med. Collection Agency*, 320 F.R.D. 513, 519 (C.D. Cal. 2017); *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 304 (N.D. Cal. 2017); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019).

**Defendant's statement:**

    This is a putative class action lawsuit in which Plaintiff alleges that Defendant called him using a pre-recorded voice without his consent. But Defendant only called the number at issue because Defendant's customer provided it as the contact number for his electricity service account and consented to receive calls on that phone number about his account. Indeed, Defendant had interactions with its customer at the phone number in question.

    The calls at issue were placed for the emergency purpose of alerting Defendant's customers that their electricity service would imminently be disconnected. Any reasonable person would consider imminent disconnection of their electricity service—and thus their inability to heat or cool their home, refrigerate their food, use lifesaving medical equipment or the internet—to be an emergency. Since calls made with an emergency purpose are exempt from 47 U.S.C. § 227(b)(1)(A), regardless of whether they use a pre-recorded voice and regardless of whether they reach the person who provided the number, Plaintiff's claim fails for this reason alone.

    Even setting aside this dispositive defense, no class could be certified in this case. Knowing that Defendant only contacts consenting persons absent a mistake—

like someone giving Defendant an incorrect number—Plaintiff presumably seeks to certify a "wrong number" class. But no records of "wrong number" contact exist meaning vastly individualized inquiries will be necessary to determine whether there's a single other person like Plaintiff, who claims he was contacted as a result of a mistake, such as Defendant's customer's number being reassigned to him.

As such, Defendant contends Plaintiff's claim fails on the merits and that a class could never be certified.

2.  Subject Matter Jurisdiction:

**Plaintiff:**

Plaintiff asserts a claim against SCE Edison under the TCPA, which is a federal statute. Under 28 U.S.C. § 1331, he therefore has properly invoked this Court's subject matter jurisdiction over a federal question. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371-72 (2012).

**Defendant:**

Defendant does not dispute this Court's federal question jurisdiction. Defendant contends that neither Plaintiff nor the putative class members have standing under Article III of the U.S. Constitution.

3.  Legal Issues:

The Parties identify the following legal issues underlying the claims and defenses asserted in this action:

- Whether this case can be certified as a class action;
- Whether individual inquiries regarding who owns phone numbers reported by SCE customers as belonging to them will predominate over issues common to the proposed class such that consent cannot be manageably determined on a classwide basis;

- Whether individual inquiries regarding whether putative class members' claims are subject to arbitration or other dispute resolution provisions will predominate over such issues common to the proposed class;
- Whether SCE made prerecorded calls to cellular and other protected telephone numbers;
- Whether the call recipients consented to receive the calls from SCE;
- Whether calls from a utility service provider warning customers of a disconnection of service are exempt from the TCPA as calls made for an emergency purpose;
- Whether the FCC's interpretation of the application of the emergency purposes exemption is correct;
- Whether the "emergency" call exception to the TCPA's prerecorded call provisions is appropriate;
- Whether SCE's calls to a phone number reported to belong to its customer can willfully violate the TCPA.

4. <u>Damages</u>:

The Plaintiff is seeking statutory damages between $500 and $1,500 per violation under the TCPA on behalf of himself and the putative class. Defendant denies that Plaintiff is entitled to any relief whatsoever.

5. <u>Parties, Evidence, etc.</u>:

<u>Parties/Witnesses:</u>

- Asher Bronstin, Plaintiff
- Southern California Edison Company, Defendant
- Verizon Business and downstream telephone providers, who service the 800-551-4499 telephone number – information relating to the calls at issue, calling records, and information on subscribers of record

- 5 -
JOINT RULE 26(F) REPORT

*Bronstin v. Southern California Edison Company*

- T-Mobile and downstream telephone providers, who service the Plaintiff's telephone number – information relating to the calls at issue, calling records, and information on subscribers of record

6. Insurance:

Not applicable to Plaintiff.

Defendants: Defendant is not aware of any insurance coverage that applies to this case.

7. Manual for Complex Litigation:

The Parties agree that the Manual for Complex Litigation should be utilized.

8. Motions:

The Plaintiff will file a motion for class certification after he has received sufficient information regarding SoCal Edison's calling conduct.

9. Dispositive Motions:

The Plaintiff does not intend to file any dispositive motions at this juncture. Defendant intends to file an early dispositive motion because the calls at issue are exempt from the TCPA under the emergency purposes exemption.

10. Status of Discovery:

Discovery has commenced and is in the early stages.

11. Discovery Plan:

**Plaintiff's Position:**

Recognizing that the precise contours of the case, including the amounts of damages at issue, if any, may not be clear at this point in the case, in making the proposals below concerning discovery, the parties have considered the scope of discovery permitted under Fed. R. Civ. P. 26(b)(1). At this time, the parties wish to apprise the Court of the following information regarding the "needs of the case":

The Plaintiff will seek discovery on the following subjects: (1) SoCal Edison's calling data regarding Plaintiff and the proposed class; (2) Defendant's policies and procedures regarding compliance with the TCPA, including the claimed purposes of the calls and why they are sent; (3) the appropriateness and applicability of any affirmative defenses under the TCPA, including the "emergency" purposes exemption, and (4) Defendant's negligence or willfulness regarding any TCPA violations.

Discovery in this matter should not be phased or bifurcated. The Plaintiff opposes any bifurcated discovery. Bifurcation of discovery is often "counterproductive." MANUAL FOR COMPLEX LITIGATION (FOURTH) ("MCL 4th") § 21.15 (2015). That is readily apparent here. To begin, the proposed bifurcation almost guarantees that the parties will need to duplicate their work and the Defendant can pursue its chosen defenses presented here through discovery while denying the Plaintiff the opportunity to adduce discovery into the class claims. The inevitable disputes about what qualifies as merits vs. class discovery is thus a second reason to deny the request for bifurcation. Defendant contends that bifurcated discovery is more efficient because the parties can avoid unnecessary discovery into other issues if Plaintiff's claims fail. Defendant also argues that phased discovery would help avoid unnecessary discovery and undue burden to Defendant. But Defendant essentially asks this Court to apply a rule that applies only in the exceptional case to a run-of-the-mill class action. Defendant's arguments are certain to be true of any class action lawsuit: if the lead plaintiff's claims do not have merit or the class cannot otherwise be certified, the class action disappears, and the defendant saves time and money by not having to litigate the rest of the case. Defendant has not pointed to any facts that make this case exceptional. Although Defendant takes issue with some of Plaintiff's legal allegations, its contention that a particular affirmative defense

should apply is itself a question to be resolved in discovery and not for the Court's summary decision on a discovery motion.

Indeed, faced with a similar motion, another federal court judge denied a bifurcation request in another TCPA case:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*See Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023). Courts in this circuit, including this one, have similarly held, particularly when the individual and class claims (or defenses) overlap, as here. *Kearns v. Loandepot.com, LLC*, No. 8:22-CV-01217-JWH (JDEX), 2023 WL 9375111, at *1 (C.D. Cal. Dec. 4, 2023) (denying motion to bifurcate when there was an overlap between individual and class discovery); *Taylor v. GAINSCO Auto Ins. Agency, Inc.*, No. 3:24-CV-2889-L-BN, 2025 WL 906233, at *2 (N.D. Tex. Mar. 24, 2025) (refusing to bifurcate a reassigned number TCPA class action); *Blair v. Assurance IQ LLC*, No. C23-0016-KKE, 2023 WL 6622415, at *3 (W.D. Wash. Oct. 11, 2023) (denying motion to bifurcate on the issue of whether or not a prerecorded voice was used); *Smith v. loanDepot.com, LLC*, No. CV-22-01674-PHX-GMS, 2023 WL 8183173, at *4 (D. Ariz. Nov. 27, 2023) (denying motion to bifurcate when there was significant overlap between the individual and class claims, deprive plaintiff of necessary information to certify the proposed class, and where the defendant made the allegation that the class was uncertifiable); *Urb. v. Tesla,*

*Inc.*, 698 F. Supp. 3d 1124, 1138 (N.D. Cal. 2023) ("[B]ifurcation in the absence of agreement often results in the parties expending significant time and expense fighting over whether particular discovery requests involve class certification or the merits.").

There is also real risk that the requested bifurcation will prejudice Plaintiff through the loss of evidence held by third parties, such as any third-party vendors involved in the Defendant's calls. The risk to the putative class members' interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where Mr. Pasco was unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue." As a result, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See e.g. Abramson v. All American Power and Gas PA, LLC*, Civil Action No. 2:20-cv-1173 (W.D. Pa. September 9, 2020); *Cooley v. Freedom Forever LLC et. al.*, Civil Action No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, Civil Action No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* Civil Action No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, Civil Action No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014). Here, Plaintiff is simply seeking to proceed in the ordinary course with

discovery. In any event, the Plaintiff respectfully observes that, should the Court be inclined to grant bifurcation, it should do so after the parties have had an opportunity to fully brief the issue, and not in the context of a Rule 26(f) report.

**Defendant's Position:**

Defendant proposes that discovery should be phased, with a short, initial focusing on Plaintiff's individual claim, including the dispositive threshold issue of whether the calls were made for emergency purposes and thus subject to the TCPA at all. The second phase, if Plaintiff's claim remains, would address class certification. Under this proposed schedule:

- The first 90 days of discovery (or 60 if the Court prefers) will be limited to issues relating to Plaintiff's individual claims;
- Defendant will be permitted to file, within 30 days of the close of the first phase, a dispositive motion; and
- If the Court denies Defendant's dispositive motion, the parties will within 14 days submit a proposed schedule for class discovery.

Defendant's proposed schedule is the most fair and efficient course given the threshold issues mentioned above and the inequity of imposing the immense cost of class discovery on Defendant before addressing whether the calls at issue are even subject to the TCPA in the first place. Application of the emergency purposes exception, for example, would be dispositive of the entire case. Indeed, courts routinely enter phased discovery schedules under similar circumstances in TCPA cases. *See e.g.*, *Reimer v. Medigap*, No. 1:23-cv-00683, ECF 17 (E.D. Va. 2023) ("rocket docket" court phasing discovery in TCPA case to focus on issues related to plaintiff's individual claim); *Moore v. Realgy*, 1:22-cv-02489, ECF 12 (N.D. Ill. Sept. 21, 2022) (granting bifurcated discovery in TCPA case to resolve whether the defendant placed the calls); *Weister v. VantagePoint AI, LLC*, No. 8:21-cv-01250,

- 10 -
JOINT RULE 26(F) REPORT

*Bronstin v. Southern California Edison Company*

ECF 15-16 (M.D. Fla. Sept. 1, 2021); *Moore v. Charter Commc'ns, Inc.*, No. 3:20-cv-01867, ECF 24 (D. Conn. Mar. 24, 2021) (similar); *Williams v. Tax Defense Network, LLC*, No. 2:20-cv-00312, ECF 15 (N.D. Ind. Nov. 5, 2020) (similar); *Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, ECF 12 (N.D. Ohio Feb. 25, 2020) (same); *Connor v. Humana Commc'ns, Inc.*, No. 6:19-cv-2008, ECF 31 (D.S.C. Dec. 5, 2019) (same and allowing defendant to file individual summary judgment motion before class discovery); *Leschinsky v. Inter-Continental Hotels Corp.*, 2015 WL 6150888, at *1 (M.D. Fla. Oct. 15, 2015) (phasing merits and class discovery in putative class TCPA action); *Degutis v. Fin. Freedom, LLC*, 2013 WL 10207621, at *1 (M.D. Fla. Oct. 18, 2013) (granting defendant's request to phase discovery in putative class action); *MacDonald v. R&H Indus., LLC*, No. 2:20-cv-00682, ECF 17 (D. Ariz. Jul. 17, 2020) (phasing merits and class discovery in TCPA class action). That includes courts in this district. *See*, *e.g.*, *May v. Gladstone et al.*, 2:21-cv-02312, ECF 17, 19 (C.D. Cal. June 28, 2021) (similar)

And there are even stronger reasons to do so here than in these other cases. **First**, phased discovery will allow the Court to address threshold dispositive issues upfront, including whether the emergency purposes exception applies. **Second**, it would make little sense to open the door to expensive class-wide discovery before addressing the narrow dispositive issues. Indeed, calls made to other persons have no bearing on application of the emergency purposes exception to end this case, and focusing the inquiry on when and whether the phone numbers of Defendant's customers were reassigned to non-customers just distracts from the threshold dispositive question, putting the cart before the horse. Phased discovery would "simplify the case and [] save both parties the time and expense of class discovery[.]" *Akselrod v. MarketPro Homebuyers LLC*, 2021 WL 100666, at *1 (D. Md. Jan. 12, 2021).

**Third**, the interests of proportionality weigh in favor of phased discovery, allowing the parties to potentially avoid entirely the significant expenses of class discovery. **Fourth**, phased discovery will have no prejudicial effect on Plaintiff. In fact, Plaintiff (and his counsel) will *benefit* from phased discovery that will allow him to determine whether his own claims are viable before investing the time and money into representing a class. By the same token, the prejudice to Defendant in not phasing discovery is real and immediate, as "class actions involve the potential for hefty litigation expenses and an extensive use of judicial resources in the resolution of these claims. It is also generally understood that the costs can be particularly enormous for defendants." *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (cits. omitted). **Fifth**, phasing discovery puts off nearly inevitable class discovery disputes until dispositive questions unaffected by class discovery are addressed.

Tellingly, in all but one of the class actions where the undersigned law firm has been counsel and the respective courts have ordered phased discovery, those cases never progressed to a point where class certification briefing or expert discovery was *ever required*. *See, e.g., Alley v. Eligo Energy*, LLC, 1:22-cv-04543, ECF 21 (N.D. Ill. Jan. 5, 2023) (stipulated dismissal); *Jimenez v. Social Firestarter LLC*, 1:22-cv-03834, ECFs 17, 21 (stipulated dismissal) (N.D. Ill. Nov. 30, 2022); *Moore v. Realgy*, 1:22-cv-02489, ECF 18 (stipulation to dismiss); *Lindenbaum*, No. 1:19-cv-2862, ECFs 54, 55 (N.D. Ohio June 7, 2022) (granting summary judgment); *Williams*, No. 2:20-cv-00312, ECF 27 (N.D. Ind. Feb. 25, 2021) (stipulation to dismiss case); *Charvat v. LE Energy, LLC*, No. 2:19-cv-1325, ECF 51 (S.D. Ohio Mar. 25, 2020) (same); *Moore v. Mega Energy, LP*, No. 1:19-cv-03703, ECF 19 (N.D. Ill. Jul. 18, 2019) (same); *MacDonald*, No. 2:20-cv-00682, ECF No. 23 (D. Ariz. Jan. 26, 2021) (same); *Connor*, 6:19-cv-2008, ECF No. 48 (D.S.C.

Sept. 9, 2020) (same). This speaks to the efficiency of phased discovery, and it strongly counsels in favor entering a similar schedule here.

All or most of the cases Plaintiff cites in which courts did not bifurcate discovery appear to be distinguishable because they did not involve a dispositive individual merits defense. In *Katz v. Allied First Bank*, for example, Defendant had asked for bifurcation to begin with class certification and only proceed to merits discovery in the second phase. Plaintiff's argument that putative class members will be prejudiced is misguided. Putative class members benefit from an early determination that the individual class representative's claims fail rather than wait years to be bound by that determination. SCE has a litigation hold in place that will remain for the duration of this litigation, so there is no risk of any loss of Defendant's records prejudicing putative class members. Defendant is open to briefing the issue of bifurcation in a separate motion if that is the Court's preference but believes it is most efficient to decide that question now in the context of scheduling.

12. <u>Discovery Cut-off:</u>

Plaintiff requests until November 20, 2026 to conduct discovery. Plaintiff believes that any attempt at bifurcation is inappropriate and opposes any attempts at bifurcation. Defendant proposes a cutoff of individual discovery within 90 days.

13. <u>Expert Discovery:</u>

**Plaintiff's Position:**

- Plaintiff's expert disclosure Deadline: December 20, 2026
- Defendant's expert disclosure Deadline: December 20, 2026
- Rebuttal expert disclosure Deadline: January 8, 2027
- Expert discovery deadline: February 5, 2027

**Defendant's Position:**

Defendant proposes the parties file a revised case management statement fourteen days following the Court's decision on its dispositive motion and, to the extent anything remains of Plaintiff's claims, set expert deadlines at that time.

14. <u>Settlement/Alternative Dispute Resolution (ADR):</u>

The parties certify that they have considered the potential benefits of settling the case before undertaking significant discovery or motion practice, and report that, at this time, Plaintiff reports he is not interested in individual settlement. A Notice to Parties of Court Directed ADR Program (Form ADR08) has not been filed in this matter. Plaintiff prefers private mediation, which should occur after some initial discovery has been conducted. Defendant prefers a settlement conference with the Court and believes that could be productive with little to no discovery.

15. <u>Trial Estimate:</u>

**Plaintiff's Position**:

Plaintiff believes that 5 days is sufficient and plans to call 3-5 witnesses. Plaintiff submits that the TCPA class action trial alleging similar violations that he has been a part of took 5 days to complete.

**Defendant's Position**:

Defendant believes the trial could last 1-2 days in the event no class is certified but would last many weeks, at a minimum, if a class were to be certified (which Defendant contends would be improper), due to Defendant's due process right to call class members as witnesses to establish defenses such as consent, which will necessarily be individualized and require not just cross-examination of call recipients, but third party subpoenas for testimony from other witnesses.

16. <u>Trial Counsel:</u>

Andrew Perrong for the Plaintiff.

E. Keith Emanuel for Defendant.

17. <u>Magistrate Judge:</u>

The parties do not agree to try the case before a Magistrate Judge.

18. <u>Independent Expert or Master:</u>

The Court should not consider appointing a master pursuant to Rule 53 or an independent scientific expert.

19. <u>Schedule Worksheet</u>

The Parties are not attaching the regular Court's worksheet for scheduling dates, given their disagreement about how discovery should proceed. The worksheet form itself acknowledges that class actions will often need to vary from the typical worksheet content. Defendant asserts that the Court should not set dates for expert discovery, trial, or pretrial at this time as the first phase of discovery should focus on the individual merits and the necessity of further events will turn on the outcome of SCE's dispositive motion on the individual merits.

20. <u>Class Action</u>

**Plaintiff's Position**:

Plaintiff proposes the following briefing schedule for Plaintiff's Motion for Class Certification:

- Plaintiff's Motion for Class Certification Deadline: February 12, 2027
- Opposition to Motion for Class Certification Deadline: March 5, 2027
- Reply Brief for Motion for Class Certification Deadline: March 19, 2027
- Hearing on Motion for Class Certification: April 1, 2027

**Defendant's Position**:

Defendant proposes that the Court wait to decide the schedule related to class certification briefing until the status conference fourteen days following its ruling on Defendant's dispositive motion. Defendant anticipates it will require longer than three weeks to respond to Plaintiff's class certification motion.

21. <u>Other Issues:</u>

No other issues to report at this time.

[Signature page to follow]

Respectfully submitted,

Dated: February 26, 2026	PERRONG LAW LLC

By: <u>/s/Andrew R. Perrong</u>

Andrew R. Perrong

Attorney for Plaintiff

DATED: February 26, 2026

By:  <u>/s/E. Keith Emanuel</u>
E. Keith Emanuel (admitted *pro hac vice*)
Alex Terepka
WATSTEIN TEREPKA LLP
Attorneys for Defendant,
SOUTHERN CALIFORNIA EDISON COMPANY

**ATTESTATION OF SIGNATURE**

Pursuant to Central District Electronic Local L.R. 5-4.3.4, I hereby certify that the content of this document is acceptable to counsel for Defendant, and I obtained his authorization to affix their electronic signatures to this document.

<u>/s/ Andrew R. Perrong</u>
Andrew R. Perrong